## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **JOHN BRENNAN, KATHERINE FRITTS, MAXX HOCKENBERRY and CASEY GOSPODAREK** | |
| Plaintiffs, | **Hon. George A. O'Toole, Jr.** |
| v. | **Case No. 1:24-cv-10029** |
| **THE BOSTON BEER COMPANY, INC.** | |
| Defendant. | |

## DEFENDANT THE BOSTON BEER COMPANY, INC.'S MEMORANDUM IN SUPPORT OF ITS PARTIAL MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED COMPLAINT

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ..................................................................................................1

II.   RELEVANT FACTS ............................................................................................2

    A.    The Noncompete at Issue......................................................................2
    B.    Relevant Facts With Respect to Ms. Fritts' Claims ...............................3
    C.    Relevant Facts With Respect to Mr. Brennan's Claims ..........................4
    D.    Relevant Facts With Respect to Mr. Hockenberry's Claims...................5
    E.    Relevant Facts With Respect to Ms. Gospodarek's Claims....................6

III.  ARGUMENT ........................................................................................................7

    A.    Legal Standard ......................................................................................7
    B.    Breach of Contract ................................................................................7
    C.    Breach of Implied Covenant of Good Faith and Fair Dealing................9
    D.    Unjust Enrichment ..............................................................................10
    E.    There is No Chapter 93A Violation Because Employment Agreements Do not Constitute Trade or Commerce ...................................................................11
    F.    Count VII Should be Dismissed as to Mr. Hockenberry Because the MNAA Does Not Apply to His Noncompete Which Was Signed Before the Statute Became Effective ..............................................................................................12
    G.    Mr. Brennan's Tortious Interference Claim Should Be Dismissed .......12

        1.    Mr. Brennan's Tortious Interference Claim is Precluded by the Exclusivity Provision of 151B .........................................................12
        2.    Mr. Brennan Did Not Suffer Economic Harm Because of Boston Beer's Actions ...............................................................................14

IV.   CONCLUSION ...................................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

ADH Collision of Bos., Inc. v. Wynn Resorts, Ltd.,
   2020 U.S. Dist. LEXIS 118380 (D. Mass. July 6, 2020)....................................................15, 16

Allstate Ins. Co. v. Fougere,
   79 F.4th 172 (1st Cir. 2023)........................................................................................................12

Bulwer v. Echonous, Inc.,
   2024 U.S. Dist. LEXIS 59367 (D. Mass. Mar. 29, 2024) ............................................................3

Conformis, Inc. v. Aetna, Inc.,
   58 F.4th 517 (1st Cir. 2023)........................................................................................................13

Covino v. Spirit Airlines, Inc.,
   406 F. Supp. 3d 147 (D. Mass. 2019) ..........................................................................................3

Croteau v. MiTek Inc.,
   2020 U.S. Dist. LEXIS 144097 (D. Mass. Aug. 12, 2020)........................................................13

Cynosure LLC v. Reveal Lasers LLC,
   2022 U.S. Dist. LEXIS 234160 (D. Mass. Nov. 9, 2022)..........................................................12

Debnam v. FedEx Home Delivery,
   766 F.3d 93 (1st Cir. 2014).........................................................................................................12

Dorney v. Pindrop Sec., Inc.,
   2015 U.S. Dist. LEXIS 129312 (D. Mass. Sep. 25, 2015) .........................................................11

Driscoll v. Simsbury Assocs.,
   2018 U.S. Dist. LEXIS 77890 (D. Mass. May 9, 2018) .............................................................12

Eichenholz v. Brink's Inc.,
   2019 U.S. Dist. LEXIS 35522 (D. Mass. Mar. 6, 2019)............................................................14

Evergreen Adhesives, Inc. v. 3M Co.,
   2023 U.S. Dist. LEXIS 154133 (D. Mass. Aug. 31, 2023)..........................................................8

Fine v. Guardian Life Ins. Co. of Am.,
   450 F. Supp. 3d 20 (D. Mass. 2020) ..........................................................................................11

Future St. Ltd. v. Big Belly Solar, LLC,
   2020 U.S. Dist. LEXIS 136999 (D. Mass. July 31, 2020)...........................................................8

4860-9178-4108.4

Hamann v. Carpenter,
    937 F.3d 86 (1st Cir. 2019)........................................................................................15

Kahn v. EarthLink Bus., LLC,
    2018 U.S. Dist. LEXIS 241019 (D. Mass. Oct. 15, 2018).......................................11

KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC,
    2021 U.S. Dist. LEXIS 132167 (D. Mass. July 15, 2021).......................................10

MIT Fed. Credit Union v. Cordisco,
    470 F. Supp. 3d 81 (D. Mass. 2020) ..........................................................................8

New England Gen-Connect, LLC v. US Carburetion, Inc.,
    2017 U.S. Dist. LEXIS 161614 (D. Mass. Sep. 29, 2017) ........................................8

NuVasive, Inc. v. Day,
    954 F.3d 439 (1st Cir. 2020)......................................................................................13

Perez-Tejada v. Mattress Firm, Inc.,
    2019 U.S. Dist. LEXIS 27324 (D. Mass. Feb. 21, 2019) ..........................................9

Portier v. NEO Tech. Sols.,
    2019 U.S. Dist. LEXIS 227494 (D. Mass. Dec. 31, 2019)......................................12

Power v. Connectweb Techs., Inc.,
    2023 U.S. Dist. LEXIS 105857 (D. Mass. Feb. 13, 2023) ........................................9

Sodexo Operations, LLC v. Abbe,
    382 F. Supp. 3d 162. (D. Mass. 2019) .....................................................................13

Williams v. Astra USA, Inc.,
    68 F. Supp. 2d 29 (D. Mass. 1999) ............................................................................9

**State Cases**

Archer v. GrubHub, Inc.,
    2021 Mass. Super. LEXIS 8 (Jan. 11, 2021) .............................................................9

Automile Holdings, LLC v. McGovern,
    483 Mass. 797 (2020) ...............................................................................................13

Fitzgerald v. Commonwealth,
    32 Mass. L. Rep. 481 (2015).....................................................................................14

Green v. Wyman-Gordon Co.,
    422 Mass. 551 (1996) ...............................................................................................14

Informix, Inc. v. Rennell,
    41 Mass. App. Ct. 161 (1996)...................................................................................12

4860-9178-4108.4

Machado v. System4 LLC,
    465 Mass. 508 (2013) ....................................................................................9

Manning v. Zuckerman,
    388 Mass. 8 (1983) ......................................................................................12

Robert & Ardis James Found. v. Meyers,
    474 Mass. 181 (2016) ..................................................................................10

Rodden v. Savin Hill Enters., LLC,
    33 Mass. Law Rep. 442 (2016) ...................................................................16

Tech Plus, Inc. v. Ansel,
    59 Mass. App. Ct. 12 (2003) .......................................................................15

Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.,
    474 Mass. 382 (2016) ..................................................................................14

**Federal Statutes**

Civil Rights Act of 1964 Title VII ....................................................................2

**State Statutes**

M.G.L. c. 149, §24L .............................................................................2, 3, 9, 13

M.G.L. c. 93A, §11 ....................................................................................2, 3, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..................................................................................2, 3, 8

4860-9178-4108.4

Pursuant to Fed. R. Civ. P. 12(b)(6), Defendant The Boston Beer Company, Inc. ("Boston Beer" or "Defendant") submits this memorandum in support of its Partial Motion to Dismiss Plaintiffs' Consolidated Amended Complaint.

## I.    INTRODUCTION

Plaintiffs are all former employees of Boston Beer.  Collectively, they have brought a number of claims against Boston Beer stemming from their respective employment with Boston Beer as well as the timeframes following their employment, specifically relating to the time during which they are or were each subject to restrictive covenants.[1]  Plaintiffs allege that their employment agreements contained an invalid and unenforceable noncompete provision and the majority of Plaintiffs' claims are based on this theory.[2]

Specifically, Plaintiffs have brought eight claims against Boston Beer:  Intentional Discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") by Plaintiffs Fritts and Brennan (Count I[3]); Retaliation in violation of Title VII by Plaintiffs Fritts and Brennan (Count II); Tortious Interference with Contract & Business Relations by Plaintiff Brennan (Count III); Breach of Contract (Count IV); Breach of Implied Covenant of Good Faith and Fair Dealing (Count V); Unjust Enrichment (Count VI); Invalid Noncompetition Agreement in violation of M.G.L. c. 149, §24L Count VII) and Violations of Massachusetts Consumer Protection Act, M.G.L. c. 93A, §11 (Count VIII).  Boston Beer moves for the dismissal of Plaintiffs' Breach of Contract, Breach of Implied Covenant of Good Faith and Fair Dealing, Unjust Enrichment and

---

[1]    Only one of the Plaintiffs, Casey Gospodarek, is currently subject to restrictive covenants.

[2]    Two of the Plaintiffs – Ms. Fritts and Mr. Brennan – are also pursuing discrimination and/or retaliation claims. These claims are not the subject of Boston Beer's instant motion.

[3]    The Consolidated Amended Complaint does not number the causes of action.  For ease, Defendant has identified each cause of action with a Count number.

1

Massachusetts Consumer Protection Act claims.  Boston Beer also moves for the dismissal of Mr. Brennan's Tortious Interference with Contract & Business Relations claim and Mr. Hockenberry's Invalid Noncompetition Agreement claim.

For the reasons set forth herein, Boston Beer respectfully requests that this Court dismiss these Counts from the Complaint.

## II.     RELEVANT FACTS[4]

### A.     The Noncompete at Issue

Plaintiffs each signed an employment agreement ("Employment Agreement") that contained a noncompetition agreement with the following relevant provision ("Noncompete"):[5]

> During the period commencing on the date hereof and continuing until the expiration of one (1) year from the date on which the Employee's employment with the Company terminates (the "Restricted Period"), the Employee shall not, without the prior written consent of the Company, which consent the Company may grant or withhold in its sole discretion, directly or indirectly, for his or her own account or the account of others, in any geographic areas in which Employee provided services to the Company, or about which Employee obtained Proprietary Information, during the last two years of his/her employment by the Company, as an employee… or otherwise, engage in the importing, production, marketing, sale or distribution to distributors of any beer, malt beverage, hard cider or product produced by the Company at any time during the Employee's tenure with the Company… which has a wholesale price within twenty-five (25%) of the wholesale price of any of the Company's products[.]

---

[4]   For purposes of Defendant's Rule 12(b)(6) motion only, Boston Beer accepts Plaintiffs' allegations as true.  As noted below, there are certain allegations that are contradicted by the documentation incorporated by reference into the Complaint.  Boston Beer notes these facts herein.

[5]   As discussed in more detail below, Mr. Hockenberry signed his Employment Agreement upon his hire, in March 2017. The Noncompete he signed, while substantively the same as the language noted above, was part of a pre-2018 Employment Agreement as compared to the other Plaintiffs, who each signed their respective agreements after Massachusetts enacted the Massachusetts Noncompetition Agreement Act in 2018.  Boston Beer attaches each respective Employment Agreement containing the respective Noncompete because curiously, the Employment Agreement that Plaintiffs attach to the Complaint is missing any signature and fails to identify that the agreement has been redacted.  See Complaint, Exhibit 1.  As the attached Employment Agreements show, they are digitally signed by each Boston Beer employee.  In considering the merits of this motion to dismiss, the Court may consider documents incorporated by reference in the complaint.  See Covino v. Spirit Airlines, Inc., 406 F. Supp. 3d 147, 149 (D. Mass. 2019) (citing Nollet v. Justices of Trial Court of Mass., 83 F. Supp. 2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000)).  See also Bulwer v. Echonous, Inc., 2024 U.S. Dist. LEXIS 59367, at *1-2 (D. Mass. Mar. 29, 2024) (taking into consideration the plaintiff's independent contractor agreement which was not attached to the complaint "but the authenticity of which is not disputed and which [was] central to the claims at issue[.]")

Consolidated Amended Complaint ("Complaint,") ¶ 17.

The Noncompete also contains a notice provision, which requires employees to provide advance notice of any new employment – either at the end of their employment with Boston Beer or at any time during the time period that they were subject to the Noncompete. Boston Beer is then required to determine whether it wishes to enforce the Noncompete. As noted above, Boston Beer has the ability to consent to otherwise competitive employment with a departing employee.

### B.    Relevant Facts With Respect to Ms. Fritts' Claims

Ms. Fritts started working for Boston Beer in February 2016 as a Brewery Representative. Complaint, ¶ 56. As a condition of employment, she signed an Employment Agreement that contained the Noncompete provision. Id. Ms. Fritts was promoted to Senior Brewery Representative in 2016. Complaint, ¶ 57. In June 2019, Ms. Fritts resigned from her position with Boston Beer. Complaint, ¶ 61. Ms. Fritts was rehired by Boston Beer in July 2019. Complaint, ¶ 65. Ms. Fritts signed a new Employment Agreement, which is attached hereto as **Exhibit A**. Ms. Fritts' employment was terminated in June 2022. Complaint, ¶ 132. Boston Beer informed Ms. Fritts that the company was enforcing the Noncompete for the one-year period and paid her $3,000 in consideration. Complaint, ¶ 134.[6] Plaintiff was unemployed for a period of several months following her separation from Boston Beer, before getting a job in a new industry. Complaint, ¶ 135. Ms. Fritts has not alleged that she attempted to seek employment in the beer industry after leaving Boston Beer or that she forewent any employment opportunity in the beer industry. She

---

[6]    Section 4(d) of the Employment Agreement sets forth that "If the Company elects to enforce [the Noncompete]… the Company shall pay Employee, as additional consideration for his/her compliance with Section 4(a), the amount set forth as such additional consideration in the Offer Letter provided to and signed by Employee[.]"

3

also has not alleged that she identified any potential employment to Boston Beer during the restricted period.  <u>See</u> Complaint, generally.

### C.    Relevant Facts With Respect to Mr. Brennan's Claims

Boston Beer hired Mr. Brennan as a Brewery Representative in January 2019. Complaint, ¶ 138.  As a condition of his employment, he signed an Employment Agreement with Boston Beer, which included the Noncompete.  Complaint, ¶ 139, Brennan Employment Agreement, attached hereto as **Exhibit B**.  In July 2019, Mr. Brennan was promoted to Senior Brewery Representative. Complaint, ¶ 140.  Mr. Brennan's employment was terminated in June 2022.  Complaint, ¶ 146. Boston Beer informed Mr. Brennan that the company was enforcing the Noncompete for the one-year period. Complaint, ¶ 149.  Boston Beer provided Mr. Brennan $3,000 in consideration. Complaint, ¶ 147.

After Mr. Brennan's employment with Boston Beer ended, he secured employment with Lone Pine Brewing Company ("Lone Pine"), based in Portland, Maine. Complaint, ¶ 151.  Boston Beer called Lone Pine to investigate whether Mr. Brennan was working there.  Complaint, ¶ 157. Notably, Mr. Brennan has not alleged that he informed Boston Beer about this employment, as required by the Noncompete.  Once Boston Beer confirmed that Mr. Brennan had taken a new position, several senior executives from Boston Beer called Lone Pine and threatened to pursue litigation if Lone Pine continued to employ Mr. Brennan.  Complaint, ¶ 158.  After this, Lone Pine sent Mr. Brennan a letter terminating his employment.  Complaint, ¶ 159.  Per the letter, which is included in the body of the Complaint, Lone Pine terminated Mr. Brennan's employment after: (1) Mr. Brennan disclosed having a Noncompete with Boston Beer and that he was working through some issues; (2) Lone Pine told Mr. Brennan that it would not employ him until his issues with Boston Beer were resolved; (3) Mr. Brennan represented that the Noncompete was no longer an issue; (4) based on that representation, Lone Pine hired Mr. Brennan; (5) Boston Beer, through

Human Resources and counsel, informed Lone Pine about Mr. Brennan's Noncompete; (6) Lone

Pine understood that Mr. Brennan had an enforceable Noncompete; and (7) Mr. Brennan's attorney

took the position that the agreement was not enforceable.  As set forth in Lone Pine's letter, based

on those facts, Lone Pine decided to terminate Mr. Brennan's employment, effective July 2022.

Complaint, ¶ 159.  Mr. Brennan remained unemployed for more than three months and was forced

to look for employment in a different industry.  Complaint, ¶ 161.

      **D.**      **Relevant Facts With Respect to Mr. Hockenberry's Claims**

Mr. Hockenberry began working for Boston Beer in March 2017 as a Brewery

Representative in Burlington, Vermont. Complaint, ¶ 162.  In December 2018, he was promoted

to Senior Brewery Representative.  Complaint, ¶ 165.  In November 2019, Plaintiff was promoted

to On Premise Key Account Specialist and relocated to Seattle, Washington. Complaint, ¶ 166.  In

April 2021, Plaintiff submitted his resignation to Boston Beer.  Complaint, ¶ 180.

Plaintiff signed an Employment Agreement when he began his employment with Boston

Beer.  Complaint, ¶ 163, Hockenberry Employment Agreement, attached hereto as **<u>Exhibit C</u>**.[7]

During his exit interview, Boston Beer Human Resources reminded him that he was subject to a

one-year Noncompete and presented him with paperwork reminding him of the same.  The

paperwork also stated that Boston Beer would take the appropriate steps to enforce the agreement,

up to and including legal action, if he decided to violate the terms of the agreement.  Complaint, ¶

183.  Mr. Hockenberry worked various odd jobs for the twelve (12) months following his departure

from Boston Beer, because of the Noncompete.  Complaint, ¶ 187.  During his employment, Mr.

---

[7]    The Complaint confusingly alleges that "[d]espite the fact that [noncompete] agreements lack legal enforceability in the state of Washington, Mr. Hockenberry cooperated in good faith and signed the non-compete document under the false assumption it was valid."  Complaint, ¶ 185.  Washington's Noncompete law, Chapter 49.62 RCW, became effective January 1, 2020.  Mr. Hockenberry signed his Employment Agreement in March 2017.  It is unclear how there could have been any "false assumptions" nearly three years before this law went into effect.

Hockenberry did not apply to work at Fremont Brewing, a Seattle-based brewery, and other unidentified Washington breweries, because of the Noncompete. Complaint, ¶¶ 175-176. The Complaint does not allege that Mr. Hockenberry identified any potential job opportunities to Boston Beer during his employment or the restricted period. See Complaint, generally.

### E.    Relevant Facts With Respect to Ms. Gospodarek's Claims

Boston Beer hired Ms. Gospodarek as a Brewery Representative in October 2020. Complaint, ¶ 194. As a condition of her employment, she was required to sign and return an Employment Agreement, which incorporated the Noncompete. Complaint, ¶ 195, Gospodarek Employment Agreement, attached hereto as **Exhibit D**. In June 2022, Ms. Gospodarek was promoted to Senior Brewery Representative. Complaint, ¶ 196. In September 2022, she was promoted to Key Account Specialist ("KAS") and transferred to Chicago, Illinois. Complaint, ¶ 199. In February 2024, Ms. Gospodarek gave her notice of resignation. Complaint, ¶ 201. During her exit interview, Boston Beer reiterated to Ms. Gospodarek (verbally and via paperwork) that she was subject to a one-year Noncompete. Complaint, ¶ 203. The paperwork stated that if she violated the terms of the agreement, Boston Beer would take the appropriate steps to enforce the agreement, up to and including legal action. Id.

Ms. Gospodarek is currently unemployed. Complaint, ¶ 205. She desires to continue working in the beer industry. Id. Ms. Gospodarek has found several (unidentified) current job openings that she would apply for and readily accept if Boston Beer was not threatening legal action. Complaint, ¶ 206. The Complaint does not allege that she has identified any potential job opportunities to Boston Beer.

6

### III.    ARGUMENT

#### A.    Legal Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Evergreen Adhesives, Inc. v. 3M Co., 2023 U.S. Dist. LEXIS 154133, at *1 (D. Mass. Aug. 31, 2023) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the statement of a claim for relief; it is not a procedure for resolving the facts or merits of a case. New England Gen-Connect, LLC v. US Carburetion, Inc., 2017 U.S. Dist. LEXIS 161614, at *3 (D. Mass. Sep. 29, 2017) (citing Formulatrix, Inc. v. Rigaku Automation, Inc., 2016 U.S. Dist. LEXIS 45437, 2016 WL 8710448, at *2 (D. Mass. Apr. 1, 2016). When rendering a determination on a motion to dismiss, a court may not look beyond the facts alleged in the complaint, documents incorporated by reference therein and facts susceptible to judicial notice. MIT Fed. Credit Union v. Cordisco, 470 F. Supp. 3d 81, 84 (D. Mass. 2020) (citing Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011)).

#### B.    Breach of Contract

To succeed on a breach of contract claim, Plaintiffs must demonstrate that the parties reached a valid and binding agreement, that Boston Beer breached the terms of that agreement and that Plaintiffs suffered damages because of the breach. See Future St. Ltd. v. Big Belly Solar, LLC, 2020 U.S. Dist. LEXIS 136999, at *13 (D. Mass. July 31, 2020) (citing Michelson v. Digital Fin. Servs., 167 F.3d 715, 720 (1st Cir. 1999)). "Additionally, the plaintiff 'must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep.' " Power v. Connectweb Techs., Inc., 2023 U.S. Dist. LEXIS 105857, at *58 (D. Mass. Feb. 13, 2023) (citing

4860-9178-4108.4

Brooks v. AIG SunAmerica Life Assurance Co., 480 F.3d 579, 586 (1st Cir. 2007)); see also Williams v. Astra USA, Inc., 68 F. Supp. 2d 29, 37 (D. Mass. 1999).

Here, Plaintiffs' entire theory of the case is that there was **no** enforceable contract because the Noncompete allegedly did not meet the requirements of the Massachusetts Noncompetition Agreement Act ("MNAA"). Specifically, Count VII seeks to invalidate the agreement alleging that it does not comply with M.G.L. c. 149, §24L. And, the Complaint asserts that "Boston Beer knowingly enforced an invalid non-compete agreement[.]" Complaint, ¶ 231. A breach of contract claim is not the appropriate theory to invalidate a contract. Rather, the Court should determine whether the agreement is enforceable – as Plaintiffs have asked this Court to do via Count VII. See e.g., Perez-Tejada v. Mattress Firm, Inc., 2019 U.S. Dist. LEXIS 27324, at *11 (D. Mass. Feb. 21, 2019) (noting, in the context of the question of arbitrability, that without a binding agreement, the arbitration clause could not be enforced against the plaintiffs); Archer v. GrubHub, Inc., 2021 Mass. Super. LEXIS 8, at *28 (Jan. 11, 2021) (declining to enforce a class action waiver as invalid); Machado v. System4 LLC, 465 Mass. 508, 519, 989 N.E.2d 464, 473 (2013) (declaring a contractual provision to waive multiple damages unenforceable).

At bottom, Plaintiffs' goal is to invalidate the Noncompete. A breach of contract theory is not the appropriate vehicle to determine whether there was a valid agreement in place. Plaintiffs are trying to fit a square peg into a round hole – demonstrated by the fact that the Complaint alleges only vague assertions of a breach because Plaintiffs cannot actually point to any specific obligation or promise that Boston Beer failed to keep, which is a requirement of a successful breach of contact claim. Rather, they suggest that Boston Beer should **not** have followed the terms of the Employment Agreements at issue based on their position that there was no enforceable Noncompete.

C.        **Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs' claim of Breach of Implied Covenant of Good Faith and Fair Dealing suffers from the same illogical assertions as the breach of contract claim: this claim requires a valid contract and Plaintiffs assert there was no valid contract. "The covenant of good faith and fair dealing is implied in every contract[.]" Robert & Ardis James Found. v. Meyers, 474 Mass. 181, 189, 48 N.E.3d 442, 449-50 (2016). "To prevail on an implied duty of good faith and fair dealing claim, 'a plaintiff must [first] prove that there existed an enforceable contract between the two parties[.]' " KPM Analytics N. Am. Corp. v. Blue Sun Sci., LLC, 2021 U.S. Dist. LEXIS 132167, at *53-54 (D. Mass. July 15, 2021) (citing Boyle v. Douglas Dynamics, LLC, 292 F.Supp.2d 198, 209-10 (D. Mass. 2003)). "The covenant 'exists so that the objectives of the contract may be realized.' " Robert & Ardis James Found., 474 Mass. at 189, 48 N.E.3d at 449-50 (citing Ayash v. Dana-Farber Cancer Inst., 443 Mass. 367, 385, 822 N.E.2d 667, cert. denied sub nom. Globe Newspaper Co. v. Ayash, 546 U.S. 927, 126 S. Ct. 397, 163 L. Ed. 2d 275 (2005)). "It provides 'that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " Id. (citing Anthony's Pier Four, Inc. v. HBC Assocs., 411 Mass. 451, 471-472, 583 N.E. 2d 806 (1991), quoting Druker v. Roland Wm. Jutras Assocs., Inc., 370 Mass. 383, 385, 348 N.E.2d 763 (1976)).

Again, this claim fails because Plaintiffs' assertion is that there was no enforceable contract. And, Plaintiffs do not actually want to receive the fruits of any contract nor do they want Boston Beer to realize the objective of the agreements. The fact is that Boston Beer followed the contract to a tee because it does believe that the contracts in question were enforceable and therefore Boston Beer carried out its legal obligations. Because Plaintiffs have argued that the agreements at issue are unenforceable and invalid, they cannot at the same time argue that Boston Beer violated the covenant of good faith and fair dealing.

9

### D.    Unjust Enrichment

Unjust enrichment is the "retention of money or property of another against the fundamental principles of justice or equity and good conscience." Fine v. Guardian Life Ins. Co. of Am., 450 F. Supp. 3d 20, 35 (D. Mass. 2020) (citing Koufos v. U.S. Bank, N.A., 939 F. Supp. 2d 40, 52 (D. Mass. 2013) (Santagate v. Tower, 64 Mass. App. Ct. 324, 329, 833 N.E.2d 171, 176 (2005)). In order to establish a claim for unjust enrichment, a plaintiff must establish (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value. Id. Here, Plaintiffs have not alleged that they conferred any benefit upon Boston Beer or that Boston Beer retained money or property in inequitable circumstances. Any benefit that Plaintiffs bestowed upon Boston Beer was paid for via the consideration set forth in Plaintiffs' respective Employment Agreements. This is not a situation where Plaintiffs did not receive any compensation or valuable consideration. See Dorney v. Pindrop Sec., Inc., 2015 U.S. Dist. LEXIS 129312, at *17 (D. Mass. Sep. 25, 2015) (making out a claim for unjust enrichment where the plaintiff alleged he had not received compensation for sales he made for the defendant). Plaintiffs seem to suggest that Boston Beer received a windfall, but there can be no dispute that Boston Beer paid Plaintiffs in accordance with the terms of the respective agreements and/or that Plaintiffs received the consideration to which they were entitled. See e.g., Kahn v. EarthLink Bus., LLC, 2018 U.S. Dist. LEXIS 241019, at *15-16 (D. Mass. Oct. 15, 2018) (granting summary judgment motion where the defendant continued to provide some services at a cost to defendant, which the plaintiff then paid pursuant to the governing contracts); Cynosure LLC v. Reveal Lasers LLC, 2022 U.S. Dist. LEXIS 234160, at *29-30 (D. Mass. Nov. 9, 2022) (the start of employment is sufficient consideration for a non-competition agreement). Boston Beer provided Plaintiffs with consideration in exchange for them

10

agreeing to adhere to the restrictive covenants contained in their respective agreements. Plaintiffs may think that the consideration is unfair or regret their decisions to sign their agreements, but this does not establish a claim for unjust enrichment because Boston Beer did not accept a benefit without payment/consideration for its value.

### E.    There is No Chapter 93A Violation Because Employment Agreements Do not Constitute Trade or Commerce

Plaintiffs claim that Boston Beer engaged in unfair and deceptive acts and practices in violation of M.G.L. c. 93A §11, "in the course of its dealings with Plaintiffs. Complaint, ¶ 255. Plaintiffs cannot state a claim of a Chapter 93A violation because Massachusetts law is clear that "[e]mployment agreements between an employee and his employer do not constitute either 'trade' or 'commerce' [under Chapter 93A]." Manning v. Zuckerman, 388 Mass. 8, 13, 444 N.E.2d 1262 (1983); Informix, Inc. v. Rennell, 41 Mass. App. Ct. 161, 162-63, 668 N.E.2d 1351 (1996). See also Allstate Ins. Co. v. Fougere, 79 F.4th 172, 186 (1st Cir. 2023) ("[d]esigned 'to encourage more equitable behavior in the marketplace[…, 93A] applies to transactions that are commercial in nature between parties engaged in 'trade or commerce,' [and] excludes certain transactions, such as strictly private transactions like those between business partners or an employer and employee.") Furthermore, the First Circuit has noted Massachusetts law holding that "an employee cannot bring a suit against his or her employer under Chapter 93A." Debnam v. FedEx Home Delivery, 766 F.3d 93, 96-97 (1st Cir. 2014). See also Portier v. NEO Tech. Sols., 2019 U.S. Dist. LEXIS 227494, *73 (D. Mass. Dec. 31, 2019) ("it is well-established that Chapter 93A does not apply to claims made by an employee against an employer."); Driscoll v. Simsbury Assocs., 2018 U.S. Dist. LEXIS 77890, *19-20 (D. Mass. May 9, 2018) (dismissing the plaintiff's 93A claim because "it is based exclusively upon [the] [p]laintiff's employment relationship with

[the] [d]efendant, and therefore [plaintiff] is not entitled to invoke the protections of the Chapter 93A.")

Simply put, chapter 93A does not apply to this dispute because it arises strictly from Plaintiffs' respective employment with Boston Beer. To that end, Plaintiffs' 93A claim must be promptly dismissed.

**F.   Count VII Should be Dismissed as to Mr. Hockenberry Because the MNAA Does Not Apply to His Noncompete Which Was Signed Before the Statute Became Effective**

Mr. Hockenberry signed his Noncompete in March 2017. The MNAA is only applicable to noncompete agreements entered into on or after October 1, 2018. See Sodexo Operations, LLC v. Abbe, 382 F. Supp. 3d 162, 164 n1. (D. Mass. 2019); Croteau v. MiTek Inc., 2020 U.S. Dist. LEXIS 144097, at *22 n.5 (D. Mass. Aug. 12, 2020); NuVasive, Inc. v. Day, 954 F.3d 439, 444 (1st Cir. 2020); Automile Holdings, LLC v. McGovern,483 Mass. 797, 808 n.15 (2020). Because Mr. Hockenberry signed his agreement before the MNAA went into effect, the statute does not apply to him and therefore Count VII should be dismissed.

**G.   Mr. Brennan's Tortious Interference Claim Should Be Dismissed**

**1.   Mr. Brennan's Tortious Interference Claim is Precluded by the Exclusivity Provision of 151B**

"To defeat a motion to dismiss a claim for tortious interference with contractual relations, a plaintiff must plausibly allege that '(1) [he] had a contract with a third party; (2) the defendant knowingly induced the third party to break that contract; (3) the defendant's interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant's actions.' " Conformis, Inc. v. Aetna, Inc., 58 F.4th 517, 537-38 (1st Cir. 2023) (citing Psy-Ed Corp. v. Klein, 459 Mass. 697, 947 N.E.2d 520, 536 (Mass. 2011)). Mr. Brennan alleges that Boston Beer interfered with his contract/business relations with Lone Pine by

12

contacting Lone Pine's owner and legal counsel and threatening to enforce a Noncompete against Mr. Brennan.  Further, Mr. Brennan alleges that Boston Beer's interference was intentional and improper, "as it was an act of further retaliation against Mr. Brennan – evidenced by Boston Beer's previous decision to refrain from enforcing the non-compete clause against another former employee hired by Lone Pine less than one year after he left Boston Beer[.]" Complaint, ¶ 223.[8]

Mr. Brennan's tortious interference claim is barred by the exclusivity provision of c. 151B because he alleges that Boston Beer interfered with his Lone Pine employment as an act of retaliation because of his participation in protected activities (e.g., making an internal complaint). Complaint, ¶¶ 219, 223.  See Green v. Wyman-Gordon Co., 422 Mass. 551, 558, 664 N.E.2d 808, 813 (1996) ("Insofar as the plaintiff's common law claims are merely recast versions of her sexual harassment claims under c. 151B, they are barred by that statute's exclusivity provision.)  See e.g., Verdrager v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., 474 Mass. 382, 415, 50 N.E.3d 778, 807 (2016) (holding that the proper vehicle for the plaintiff's tortious interference claim would have been the administrative procedure provided in c. 151B); Eichenholz v. Brink's Inc., 2019 U.S. Dist. LEXIS 35522, at *27-29 (D. Mass. Mar. 6, 2019) (holding that the plaintiff's argument regarding improper means or motive was that he was retaliatorily forced out of his job because of his disability and FMLA leave, which was simply a recasting of his 151B claims); Fitzgerald v. Commonwealth, 32 Mass. L. Rep. 481, *11-13 (2015) (granting motion to dismiss where the plaintiff's tortious interference claim restated the retaliatory discharge claim asserted under chapter 151B.

---

[8]    The Complaint does not assert any facts to support this allegation in Paragraph 223 of the Complaint.  This is the first time the Complaint references any such allegation.

Mr. Brennan's only allegation of improper motive or means is that Boston Beer engaged in "further retaliation" against him by reaching out to Lone Pine and this was evidenced by Boston Beer having refrained from enforcing a Noncompete against a different former Boston Beer employee who also allegedly went to work for Lone Pine less than one year after he left Boston Beer. Complaint, ¶ 223. Further, Mr. Brennan restates that he was "harmed by Boston Beer's retaliatory acts[.]" Id. This claim simply recasts his claim set forth in Count II, which states that "Boston Beer also retaliated against Plaintiffs post-employment by enforcing a knowingly invalid noncompetition agreement against Ms. Fritts and Mr. Brennan." Complaint, ¶ 219. Because Mr. Brennan has simply recast his statutory retaliation claim as a tortious interference claim, it must be dismissed.

### 2.    Mr. Brennan Did Not Suffer Economic Harm Because of Boston Beer's Actions

A plaintiff cannot recover on a claim for tortious interference where he has failed to show that he has suffered any pecuniary loss **as a result** of the defendant's actions. See ADH Collision of Bos., Inc. v. Wynn Resorts, Ltd., 2020 U.S. Dist. LEXIS 118380, at *8-9 (D. Mass. July 6, 2020); Hamann v. Carpenter, 937 F.3d 86, 93 (1st Cir. 2019); Tech Plus, Inc. v. Ansel, 59 Mass. App. Ct. 12, 18, 793 N.E.2d 1256, 1262 (2003) ("[A] plaintiff [can]not recover on a claim for tortious interference with advantageous relationships where she ha[s] failed to show that she ha[s] suffered any pecuniary loss as a result of the defendant's actions."). Here, although Mr. Brennan alleges that Boston Beer's "retaliatory acts" caused Lone Pine to terminate his employment, the rationale provided by Lone Pine to Mr. Brennan, which is included in the complaint, makes clear that it was not Boston Beer's actions that led to his termination from employment, but rather that Mr. Brennan misrepresented to Lone Pine that the Noncompete with Boston Beer was "no longer an issue." Complaint, ¶¶ 159, 223. Therefore, any harm Mr. Brennan

14

suffered was because of his own misrepresentation, not Boston Beer's conduct.  See <u>ADH</u> <u>Collision of Bos.,</u> 2020 U.S. Dist. LEXIS 118380 at *9 (losses were not attributable to the defendant); <u>Rodden v. Savin Hill Enters., LLC</u>, 33 Mass. L. Rep. 442, *27-28 (2016) (no tortious interference claim where the loss of business was not because of the defendant's alleged improper actions).

Because Lone Pine terminated Mr. Brennan's employment after learning about the existence of the Noncompete, and the fact that he had gained employment under false pretenses, Lone Pine terminated his employment.  Therefore, Mr. Brennan has caused any damages he suffered by the loss of his Lone Pine employment.

## IV.    CONCLUSION

For the reasons stated herein, Boston Beer respectfully requests that this Court dismiss the following counts:  Count III (Tortious Interference), Count IV (Breach of Contract); Count V (Breach of Implied Covenant of Good Faith and Fair Dealing), Count VI (Unjust Enrichment), Count VII (Invalid Noncompetition Agreement claim, as to Mr. Hockenberry) and Count VIII (Violation of c. 93A).

Respectfully submitted,

*/s/ Jessica S. Jewell*
Jessica S. Jewell (BBO# 679489)
Nixon Peabody LLP
53 State Street
Boston, MA 02109
Ph. (401) 454-1046
Fax: (401) 454-1030
Email: jsjewell@nixonpeabody.com

Dated:  September 6, 2024

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed and served a copy of the within document via the Court's Electronic Filing System to all counsel of record registered and able to receive Electronic Filings in this case on this 6th day of September 2024.

*/s/ Jessica S. Jewell*

16